# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CVS PHARMACY, INC.,**

      **Plaintiff,**

v.                                                       Case No: 6:24-cv-897-PGB-EJK

**ALBERT LABUHN,**

      **Defendant.**

_____/

## ORDER

This cause comes before the Court upon the following filings:

1. Plaintiff CVS Pharmacy, Inc.'s ("**Plaintiff**" or "**CVS**") Motion for Preliminary Injunction (Doc. 12 (the "**Motion**")); Plaintiff's proposed order on the Motion (Doc. 16)[1]; and Plaintiff's Declaration of Michael H. Taday Sr. (Doc. 30 (filed under seal));

2. Defendant Albert "AJ" Labuhn's ("**Defendant**") response in opposition to the Motion (Doc. 38 (the "**Response**")); Defendant's Declarations of Albert "AJ" Labuhn (Doc. 39), Amir Desai (Doc. 40), and Quyen L. Ta (Doc. 41);

---

[1] The Court notes that, under Local Rule 3.01(a), a motion must be comprised of "a single document." Further, Local Rule 6.02(a)(2) requires that a motion for preliminary injunction "include as an attachment each paper on which the movant relies." Similarly, Local Rule 6.02(c) states that the opponent's response "must include . . . each paper on which the party relies." Accordingly, the Court advises the parties to ensure that, in the future, all exhibits are filed with the pleadings to which they pertain. (*Cf.* Docs. 16, 39, 40, 41). The Court expressly excepts from this rule exhibits that are filed under seal, which require a separate motion to seal and ruling from the Court before they can be filed. Local Rule 1.11; (*see* Doc. 30).

    3.      Plaintiff's Reply (Doc. 45 (the "**Reply**")); and

    4.      Defendant's Sur-reply (Doc. 46 (the "**Sur-reply**")).[2]

Upon consideration, the Motion is due to be denied.

## I.    BACKGROUND

CVS filed this breach of contract action against Defendant, its former employee, on May 10, 2024. (Doc. 1). In the suit, CVS seeks to enforce a restrictive covenant agreement (Doc 1-2 (the "**RCA**")) entered into by the parties during Defendant's employment with CVS. (*See generally* Doc. 1). Specifically, in light of Defendant's resignation from his position at CVS and his acceptance of a position at Molina Healthcare ("**Molina**"), CVS seeks to enforce covenants not to compete and not to disclose CVS' confidential information. (*See id.* at pp. 1–2).

According to its Complaint, CVS became the parent corporation of Aetna Resources, LLC ("**Aetna**"), one of the nation's largest health insurers, after acquiring Aetna in a merger (the "**merger**") in November 2018. (*Id.* ¶¶ 1, 5). At the time of the merger, Defendant was serving as Aetna's Vice President ("**VP**") of Service Operations. (*Id.* ¶ 10; Doc. 39, ¶ 3). Defendant retained this title after the merger up until his resignation in April 2024. (Doc. 1, ¶¶ 10, 45; Doc. 39, ¶¶ 3, 6).

The Complaint describes Defendant as having occupied a "high-ranking . . . upper echelon" position at CVS.[3] (Doc. 1, ¶ 16). CVS further avers that, through this

---

[2]    At the parties' request, the Court granted CVS leave to file a reply and Defendant leave to file a sur-reply. (Docs. 43, 44).

[3]    The Court notes that Defendant disputes many aspects of CVS' characterization of his position and job duties at CVS. (*See, e.g.*, Doc. 39, ¶¶ 6–7, 18–23).

position, Defendant was entrusted with "access to highly confidential, proprietary information about CVS'[] strategies across its business lines," particularly regarding key initiatives involving artificial intelligence and machine learning ("**AI/ML**"). (*Id.* ¶¶ 16, 23, 25–44). Specifically, Defendant had strategic oversight over the following areas:

> CVS' workforce management of (1) Aetna Service Operations, Aetna Clinical Solutions, CVS Integrated Service Centers and HealthSpire Minute Clinic; (2) call quality across Aetna's call centers; and (3) claim quality across all of Aetna's lines of business, and (4) management of the numerous vendors and vendor employees who assist Aetna in staffing call centers and processing claims. Labuhn also developed strategy across CVS to optimize innovation in its relationships with vendors.

(*Id.* ¶ 20). As a result, CVS contends that Defendant was responsible for strategic—often confidential—initiatives at CVS that used AI/ML to facilitate improvements in these areas.[4] (*See id.* ¶¶ 25–44).

A few months after the merger, Defendant entered into the RCA with CVS in exchange for a Restricted Stock Unit award. (*Id.* ¶ 57). By signing the RCA, Defendant agreed that, for a period of twelve (12) months following termination of his employment by CVS (the "**non-competition period**"), he would not,

---

[4] As an example, CVS cites that, in 2023, a "key area of focus" for Defendant's team was improving Aetna's Star Rating for Medicare Advantage and Part D ("**Star Rating**"), which drives the level of reimbursement a provider can receive from Medicare. (Doc. 1, ¶¶ 18–19, 22–24). CVS avers that Defendant was involved in initiatives using AI/ML to improve customer experience, which is an important factor in a provider's Star Rating. (*Id.* ¶¶ 18, 22–23). Specifically, Defendant was involved in AI/ML initiatives to improve call quality during customers' calls to Aetna. (*Id.* ¶¶ 25–32). Star Ratings are relative, as the Centers for Medicare & Medicaid Services compares providers when awarding them "stars." (*Id.* ¶ 20). Thus, CVS avers that it is "particularly valuable for insurance companies with Medicare contracts to replicate a competitor's tactics." (*Id.* ¶ 21). Accordingly, CVS argues that Defendant's acceptance of a role involving similar AI/ML initiatives at a competitor provider would "directly threaten Aetna's Medicare business." (*See id.* ¶ 65).

3

"directly or indirectly, engage in Competition" with CVS in the United States.[5] (*See* Doc. 1-2, pp. 3–4). The RCA defines "Competition" in relevant part, in the following way:

> Engaging in "Competition" means providing services to a Competitor of the Corporation . . . that (i) are the same or similar in function or purpose to the services [the employee] provided to the Corporation at any time during the last year of [the employee's] employment by the Corporation; or (ii) will likely result in the disclosure of Confidential Information to a Competitor or the use of Confidential Information on behalf of a Competitor.

(*Id.* at p. 3).

On April 18, 2024, Defendant gave CVS his notice of resignation. (Doc. 1, ¶ 45). Defendant further informed CVS that he had accepted an offer by Molina to serve as its VP of AI/ML. (*Id.* ¶ 47). As a result, CVS filed this lawsuit and subsequently filed the instant Motion. (Docs. 1, 12).

In the Motion, Plaintiff argues that Defendant's acceptance of the VP of AI/ML position at its competitor[6] health insurer, Molina, doubly violates the RCA. (Doc. 12, pp. 11–15). First, CVS asserts this role is "the same or similar in function or purpose" as his previous role at CVS, as it will "require him to identify, develop, and deploy AI/ML to improve organizational effectiveness." (*Id.* at p. 11 (quoting Doc. 1-2, p. 3)). Second, it argues that Defendant's acceptance of this role will almost certainly result in the disclosure of information regarding its confidential AI/ML initiatives. (*Id.* at p. 13). Thus, in the Motion, CVS asks that the Court enjoin

---

[5] The parties agree that the "Restricted Area" referenced in the RCA includes each state in the United States. (Doc. 1-2, p. 4; *see* Doc. 12, p. 19; Doc. 38, p. 5).

[6] There appears to be no dispute regarding the fact that Molina is CVS' "Competitor" under the terms of the RCA. (*See generally* Docs. 38, 46).

4

Defendant from beginning his employment at Molina and from disclosing CVS' confidential information. (*Id.* at p. 25).

Ultimately, however, Defendant did not accept the VP of AI/ML position with Molina. (*E.g.*, Doc. 38, p. 1). After the Motion was filed, Defendant informed CVS that, in light of the pending litigation, Molina had offered him a different position: President of IT Program Portfolio Delivery. (*See id.* at p. 2). Then, after further discussion with CVS, Molina offered Defendant a third position as VP of Bright Integration (the "**Bright position**"), which he ultimately accepted. (*Id.*). In the wake of Molina's recent acquisition of Bright Healthcare's California Medicare business, Defendant asserts that he will take on the narrow role of helping to ensure that "Bright's legacy systems are seamlessly integrated over to Molina's existing platforms." (*Id.* at p. 8).

As a result, in his Response to the Motion, Defendant argues that the Motion and Complaint are now moot. (*Id.* at pp. 9–11). He further asserts that Plaintiff could not establish entitlement to a preliminary injunction barring him from the Bright position even if this issue had been briefed, as the Bright position is completely different from his role at CVS[7] and relies upon experience he gained

---

[7]   In this regard, Defendant argues:

> The Bright position has no connection to Mr. Labuhn's prior position at CVS. It does not involve oversight of Molina's workforce management, program and project management, quality and analytics, and vendor management teams (*i.e.*, his duties at CVS). Nor does it involve driving strategic initiatives for Molina's enterprise-wide AI/ML or other technology-driven operational solutions (*i.e.*, CVS's articulated concerns).

(Doc. 38, p. 8) (internal citations omitted).

5

under a different employer. (*See id.* at pp. 3, 11–20). Further, in addition to disputing the nature and extent of confidential information to which he was exposed at CVS, Defendant also asserts that any such information would not be relevant to his new role. (*Id.* at p. 15). For these reasons, Defendant seeks attorney's fees and costs for being required to respond to the "moot and meritless" Motion. (*Id.* at p. 3).

      Considering the circumstances, the Court granted leave for CVS to file a reply and for Defendant to file a sur-reply with regard to the Motion. (Doc. 44). In the Reply, CVS argues that the lawsuit is not moot, citing the mootness exception of "voluntary cessation." (Doc. 45, pp. 1–4). CVS also notes that an affidavit submitted by Defendant indicates that the Bright position may not last into the final months of the non-competition period. (*Id.* at p. 3). Next, CVS impliedly requests that the Court enjoin Defendant from continuing in the Bright position. (*Id.* at pp. 4–6). Specifically, CVS asserts that its confidential information remains at risk, since, in this role, Defendant will still "have regular contact with Molina's high-level stake holders where he can impart confidential information concerning, *inter alia*, CVS' efforts to improve its Medicare offerings." (*Id.* at p. 4). CVS further suggests that Molina has gone to "extraordinary lengths" to employ Defendant, revealing that its true intent is to extract confidential information from Defendant about CVS. (*Id.* at pp. 5–6). Alternatively, assuming the Court does not enjoin Defendant from continuing in the Bright position, CVS asks that the Court enjoin

6

him from performing the duties listed as falling within the VP of AI/ML role. (*Id.* at p. 6).

Finally, in his Sur-reply, Defendant argues that the Motion and Complaint remain moot, that CVS' request to enjoin Defendant from the Bright position is not supported by any evidence, and that the Court cannot enjoin Defendant from the VP of AI/ML duties that he is not performing. (Doc. 46).

## II.  LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites" showing entitlement to this remedy. *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000) (per curiam) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). The four (4) prerequisites that Plaintiff must establish are: (1) a substantial likelihood of success on the merits of the underlying case; (2) irreparable harm in the absence of an injunction; (3) that the harm suffered by Plaintiff in the absence of an injunction would exceed the harm suffered by Defendant if the injunction issued; and (4) that an injunction would not disserve the public interest. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246–47 (11th Cir. 2002); *Miccosukee Tribe of Indians of Fla. v. United States,* 571 F. Supp. 2d 1280, 1283 (S.D. Fla. 2008).

Thus, while the decision to grant or deny a preliminary injunction rests in the discretion of the district court, the court does not have unbridled discretion.

*Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).[8] Instead, the court must exercise its discretion based on "the four [(4)] prerequisites for the extraordinary relief of preliminary injunction." *Id.* (internal quotation marks and citation omitted). Ultimately, issuing a preliminary injunction should be "the exception rather than the rule." *Siegel*, 234 F.3d at 1176.

## III. DISCUSSION

### A. The Bright Position

CVS has not established its entitlement to the extraordinary relief of a preliminary injunction preventing Defendant from performing in the Bright position. *See Siegel*, 234 F.3d at 1176. First, although CVS provided detailed arguments in the Motion regarding how it purportedly satisfied each of the four (4) prerequisites for such relief as to the VP of AI/ML position, CVS failed to brief the application of those prerequisites to the Bright position. (*Compare* Doc. 12 *with* Doc. 45). Accordingly, the Court cannot find that CVS has met its burden of persuasion on this request.

Moreover, to the extent that the Court can extrapolate from CVS' arguments regarding the VP of AI/ML position and apply them to the Bright position, they are substantially weakened in this new context. For example, at least on the current record, the Court cannot find that CVS has a "substantial likelihood" of prevailing on a claim that the Bright position breaches the RCA. *See Johnson & Johnson*, 299

---

[8] The Eleventh Circuit has adopted as binding precedent all decisions rendered by the former Fifth Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

8

F.3d at 1246. First, CVS concedes—at least for the purposes of the instant Motion—that the Bright position does not involve services that are "the same or similar in function or purpose" as those Defendant provided to CVS. (*See* Doc. 45, p. 4). Additionally, CVS' argument that Defendant's acceptance of the position violates the RCA by making it likely that CVS' confidential information will be revealed is, at present, highly speculative. (*See id.* at pp. 4–6).

Moreover, the Court is not persuaded that Molina's willingness to offer Defendant multiple roles necessarily demonstrates its ill intent. (*See id.* at pp. 5–6). Both Defendant and Molina's Chief Information Officer, Amir Desai ("**Molina's CIO**")—who was involved in interviewing and placing Defendant in the myriad positions at Molina—attest that Defendant was transparent about the RCA and his desire not to breach its terms. (Doc. 39, ¶ 9; Doc. 40, ¶¶ 1, 6–11). Additionally, Molina's CIO attests that he "currently ha[s] numerous long-term initiatives and projects in immediate need of leaders who can directly supervise and manage day-to-day responsibilities" and that his "existing team is . . . stretched thin." (Doc. 40, ¶ 5). As a result, it seems at least as likely that Molina has been flexible in placing Defendant due to his candor about the RCA and Molina's need to fill multiple positions for which Defendant has relevant experience.

Further, CVS' argument that Defendant's acceptance of the Bright position breaches the RCA implies that CVS' confidential information is likely to be jeopardized if Defendant accepts *any* position with a competitor where he regularly engages with its "high-level stakeholders." (*See* Doc. 45, p. 4). Yet, it is

9

CVS who presses that Defendant himself occupied a "high-ranking . . . upper echelon" position at CVS. (*See* Doc. 1, ¶ 16). Consequently, CVS' interpretation of the RCA would appear to place Defendant in breach even if he accepted a position involving completely different duties than he performed at CVS, unless he also agreed to a demotion. (*See id*.; Doc. 45, p. 4). The Court cannot find that CVS has established a substantial likelihood of prevailing on this interpretation of the RCA at trial. *See Johnson & Johnson*, 299 F.3d at 1246.

The same considerations weigh against a finding that CVS has established that it will be irreparably harmed absent the requested injunction. *See Johnson & Johnson*, 299 F.3d at 1246. A showing of irreparable harm is the "sine qua non of injunctive relief." *Seigel*, 243 F.3d at 1176 (quoting *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)) (internal quotation marks omitted). Further, the Eleventh Circuit Court of Appeals has "emphasized on many occasions" that "the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Id*. (quoting *City of Jacksonville*, 896 F.2d at 1285); *see also Church v. City of Hunstville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (emphasizing that the threat alleged must be "real and immediate" rather than "merely conjectural or hypothetical"). Yet, CVS' claim that its confidential information is jeopardized by Defendant's acceptance of the Bright position is, again, highly speculative. (*See* Doc. 45, pp. 4–6). As a result, the Court cannot find that CVS has established the prerequisite of irreparable harm.

The speculative nature of the harm posed to CVS by Defendant's acceptance of the Bright position also drastically changes the calculus on the relative harm to the parties caused by Defendant's acceptance of the position. *See Johnson*, 299 F.3d at 1246–47. While it is *conceivable* that CVS' confidential information could be compromised by Defendant's acceptance of a position placing him in regular contact with a competitor's "high-level stakeholders," it is almost certain that harm will occur to Defendant if he is not allowed to accept such a position. (*See* Doc. 45, p. 4; Doc. 39, ¶ 26). Defendant attests he is the sole breadwinner in his family, that he has "substantial financial obligations," and that his inability to accept employment at Molina would place his family "in dire financial straits." (Doc. 39, ¶ 26). Yet, CVS' interpretation of the RCA would severely limit, and potentially eliminate, Defendant's job opportunities in his field. Thus, CVS has not met its burden of establishing that the harm to CVS in the absence of an injunction would exceed the harm to Defendant if the injunction issued. *See Johnson & Johnson*, 299 F.3d at 1246–47.

Moreover, and for the same reasons, CVS has not established that the issuance of an injunction under such circumstances would not disserve the public interest. *See id.* at 1247. Accordingly, CVS' request to enjoin Defendant from serving in the Bright position is denied.

### B.  The VP of AI/ML Job Duties

Additionally, at present, the Court finds that CVS has not established its entitlement to an injunction preventing Defendant from performing the job duties

of Molina's VP of AI position. This outcome is required because CVS has not clearly established irreparable harm absent the issuance of this alternative injunction. *See Johnson & Johnson*, 299 F.3d at 1246.

Here, shortly after CVS filed its Complaint and the instant Motion, Defendant changed course and accepted a different role than the VP of AI/ML position at Molina. (*See, e.g.*, Doc. 38, pp. 1–2). CVS does not presently argue that the duties of the Bright position overlap with the duties of the VP of AI/ML position in any material way. (*See* Doc. 45). Indeed, CVS concedes, if only *arguendo*, that the roles are not "the same or similar in function or purpose." (*Id.* at p. 4).

Further, while Molina's CIO attests that the Bright position is "expected to last until at least Q1 of 2025," a timeframe that may fall slightly short of the non-competition period, there is no evidence before the Court that Molina intends to hold the VP of AI/ML position open for Defendant in the interim. (Doc. 40, ¶ 12). Additionally, there is no evidence before the Court demonstrating that either Defendant or Molina intend or expect that Defendant will accept a role involving the duties of the VP of AI/ML position in the future.[9] The absence of such evidence illustrates that the alleged harm is "speculative" and "hypothetical" rather than "actual and imminent." *See Seigel*, 243 F.3d at 1176 (quoting *City of Jacksonville*, 896 F.2d at 1285); *Church*, 30 F.3d at 1337. Consequently, CVS has not established

---

9   Indeed, the evidence before the Court, at least at present, tends to suggest that Defendant and Molina will go to great lengths to avoid violating the RCA. (*See, e.g.*, Doc. 39, ¶¶ 8–9, 18–24; Doc. 40, ¶¶ 7, 9–11).

12

irreparable harm, and its request to enjoin Defendant from the VP of AI/ML duties at Molina must be denied. *See Johnson & Johnson*, 299 F.3d at 1246.

### C. Mootness

Because the Court finds that CVS has not sustained its burden of establishing its entitlement to a preliminary injunction, the Court does not reach the merits of the parties' arguments regarding the alleged mootness of the Complaint. (*See* Doc. 38, pp. 9–11; Doc. 45, pp. 1–4; Doc. 46, pp. 1–2). Further, while CVS bears the burden of establishing its entitlement to a preliminary injunction, Defendant bears the "heavy burden" of proving that the entire cause of action has been rendered moot. *See Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). For this reason, Defendant's arguments regarding mootness would be better addressed in the context of a separate motion. However, to the extent Defendant argues that the case is so obviously mooted by recent events that it is entitled to attorney's fees and costs for having to respond to the instant Motion, the Court disagrees, and Defendant's request is denied.

## IV. CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Preliminary Injunction (Doc. 12) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on July 22, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties